SYLLABUS

(This syllabus is not part of the Court’s opinion. It has been prepared by the Office of the
Clerk for the convenience of the reader. It has been neither reviewed nor approved by the
Court. In the interest of brevity, portions of an opinion may not have been summarized.)

 New Jersey Transit Corporation v. Certain Underwriters at Lloyd’s London
 (A-72/73-19) (083801)

(NOTE: The Court did not write a plenary opinion in this case. The Court affirms
the judgment of the Appellate Division substantially for the reasons expressed in
Judge Yannotti’s opinion, published at 461 N.J. Super. 440 (App. Div. 2019).)

Argued January 4, 2021 -- Decided January 27, 2021

PER CURIAM

 This appeal involves an insurance coverage dispute arising out of water damage
caused by Superstorm Sandy to properties owned by plaintiff New Jersey Transit
Corporation (NJ Transit).

 At the time Superstorm Sandy struck New Jersey in October 2012, NJ Transit
carried a $400 million multi-layered property insurance policy program through eleven
insurers. When NJ Transit sought coverage for the water damage to its properties
brought about by the storm, certain of its insurers invoked the $100 million flood sublimit
in NJ Transit’s policies and declined to provide coverage up to the policy limit.

 NJ Transit filed an action seeking a declaratory judgment against those insurers.
The trial court found that the $100 million flood sublimit did not apply to NJ Transit’s
claims; it also found that the insurers had not submitted sufficient evidence to support
their claims for reformation of the policies. The court accordingly entered summary
judgment in favor of NJ Transit and denied the insurers’ motions for summary judgment.

 The Appellate Division affirmed, 461 N.J. Super. 440, 448 (App. Div. 2019),
finding that “the water damage to [NJ Transit’s] properties that occurred during
Superstorm Sandy is not subject to the $100 million flood sublimit,” id. at 457.

 The appellate court first considered the insurers’ argument that the Sandy-related
damage to NJ Transit’s properties was subject to the flood sublimit because that damage
met either of two separate definitions of “flood” in the policies: either “[t]he overflow,
release, rising, back-up, runoff or surge of surface water;” or “[t]he unusual or rapid
accumulation or runoff of surface water from any source.” Id. at 454-55.

 1
 The court noted that the policies at issue also contain separate definitions for a
“named windstorm.” Id. at 455. Specifically, the policies of most of the defendant
insurers separately define “named windstorm” to include “wind driven water, storm surge
and flood associated with, or which occurs in conjunction” with a “named windstorm.”
Ibid. And the policy of defendant Torus Specialty Insurance (Torus) defines “named
windstorm” as the “direct action of wind including storm surge when such wind/storm
surge is associated with or occurs in conjunction with” a named windstorm. Ibid.

 The Appellate Division reasoned as follows:

 The policies do not define “flood” to include “storm
 surge” and “wind driven water” associated with such a “named
 windstorm.” Although the definition of “flood” includes
 “surge,” the definition of “named windstorm” more
 specifically encompasses the wind driven water or storm surge
 associated with a “named windstorm.” Where, as here, two
 provisions of an insurance policy address the same subject, the
 more specific provision controls over the more general.

 Furthermore, if the parties had intended that damage
 from a “storm surge” would be subject to the flood sublimit,
 the policies would have stated so in plain language. Moreover,
 if the term “flood” already included damage from a “storm
 surge” associated with a “named windstorm,” as defendants
 claim, there would have been no need for the parties to include
 the “named windstorm” provision in the policies.

 [Ibid. (citation omitted).]

 The appellate court also rejected a number of the defendant insurers’ arguments
based on the language of the policies. Id. at 455-57.

 First, the court disagreed that the Occurrence Limit of Liability Endorsement
(OLLE) in the policies combines all windstorm, flood, and other perils in a single event
or “occurrence” for purposes of applying the flood sublimit. Id. at 449-50, 455. The
court noted that the OLLE “does not address whether the Sandy-related damage to [NJ
Transit’s] properties was damage ‘caused by flood’ or damage resulting from a ‘named
windstorm,’” nor does it “expressly provide that damage caused by a ‘flood’ and damage
from a ‘named windstorm’ are to be treated as a single event or ‘occurrence’ for purposes
of applying the flood sublimit.” Id. at 455-56.

 The court also rejected the insurers’ argument that, for the flood sublimit not to
apply here, the policies would have needed to contain a specific provision removing

 2
“storm surge” from the definition of “flood” or stating that the flood sublimit does not
apply to the inundation of property associated with a “named windstorm.” Id. at 456.
The court determined “that the relevant provisions of the policies are sufficiently clear
and establish that water damage associated with a ‘named windstorm’ does not come
within the definition of ‘flood’ and is not subject to the flood sublimit.” Ibid.

 Finally, the court rejected the argument that the parties never intended that the
“named windstorm” provision would remove water damage associated with a “named
windstorm” from the flood sublimit. Ibid. The court found instead that “[t]he plain
language of the policies indicates that the purpose of the ‘named windstorm’ definition
was to differentiate between the inundation caused by a ‘surge’ of water, which may have
no relationship to a storm, and the inundation resulting from a ‘storm surge,’ which the
policies define as wind driven water associated with a ‘named windstorm.’” Id. at 457.

 After reaching its decision based on the plain language of the insurance policies,
the Appellate Division explained that a decision by the United States Court of Appeals
for the Fifth Circuit supports its interpretation of the policies and that the defendant
insurers’ reliance on two other cases was misplaced. Id. at 457-60.

 The court then expressed agreement with NJ Transit’s argument that it was
entitled to coverage under New Jersey’s efficient proximate cause test, which is
sometimes referred to as Appleman’s Rule. Id. at 460-63. In reaching that
determination, the court rejected, among other arguments, certain defendant insurers’
reliance on a case that “dealt with the application of contra proferentem” and did “not
address the efficient proximate cause doctrine.” Id. at 462.

 After next rejecting the defendant insurers’ arguments that the trial court should
have considered extrinsic evidence, id. at 463-64, the Appellate Division explained why
it was not persuaded by Torus’s reformation claim, id. at 464-67.

 The Court granted the petitions for certification filed by the defendant insurers.
242 N.J. 497 (2020); 242 N.J. 504 (2020).

HELD: The Court affirms the judgment of the Appellate Division substantially for the
reasons expressed in Judge Yannotti’s thoughtful opinion. The Court relies principally
on the Appellate Division’s analysis of the plain language of the relevant insurance
policies. 461 N.J. Super. at 454-57. The Court does not rely on the discussion of
Appleman’s Rule or the doctrine of contra proferentem. See id. at 460-63.

 AFFIRMED.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON,
FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in this opinion.

 3
 SUPREME COURT OF NEW JERSEY
 A-72/73 September Term 2019
 083801

 New Jersey Transit Corporation,

 Plaintiff-Respondent,

 v.

 Certain Underwriters at Lloyd’s London,
 Maiden Specialty Insurance Company,
 RSUI Indemnity Company, and
 Westport Insurance Corporation,

 Defendants-Appellants,

 and

 Torus Specialty Insurance Company,

 Defendant-Appellant,

 and

 Hudson Specialty Insurance Company
 and Ironshore Specialty Insurance Company,

 Defendants.

 On certification to the Superior Court,
Appellate Division, whose opinion is reported at
 461 N.J. Super. 440 (App. Div. 2019).

 Argued Decided
January 4, 2021 January 27, 2021

 1
 Shawn L. Kelly and Michael J. Smith argued the cause
 for appellant StarStone Specialty Insurance Company,
 f/k/a Torus Specialty Insurance Company (Dentons US
 and Stewart Smith, attorneys; Shawn L. Kelly, Jonathan
 D. Henry, Erika M. Lopes-McLeman, Michael J. Smith,
 and Bryan W. Petrilla, on the briefs).

 Robert W. Fisher, a member of the Georgia bar, admitted
 pro hac vice, argued the cause for appellants RSUI
 Indemnity Company and Westport Insurance Corporation
 (Clyde & Co US, attorneys; Kevin M. Haas, Robert W.
 Fisher, Taylor L. Davis, a member of the Georgia bar,
 admitted pro hac vice, and James M. Bauer, a member of
 the Georgia bar, admitted pro hac vice, on the briefs).

 Kenneth H. Frenchman, a member of the New York bar,
 admitted pro hac vice, argued the cause for respondent
 (Cohen Ziffer Frenchman & McKenna, attorneys; Robin
 L. Cohen, Kenneth H. Frenchman, Marc T. Ladd, a
 member of the New York bar, admitted pro hac vice, and
 Alexander M. Sugzda, a member of the New York bar,
 admitted pro hac vice, on the brief).

 PER CURIAM

 We affirm the judgment of the Appellate Division substantially for the

reasons expressed in Judge Yannotti’s thoughtful opinion. See N.J. Transit Corp.

v. Certain Underwriters at Lloyd’s London, 461 N.J. Super. 440 (App. Div. 2019).

We rely principally on the court’s analysis of the plain language of the relevant

insurance policies. See id. at 454-57. We do not rely on the discussion of

Appleman’s Rule or the doctrine of contra proferentem. See id. at 460-63.

 2
 CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN,
PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in
this opinion.

 3